### UNITED STATES v. BALTIMORE & O. R. CO.

(District Court, N. D. West Virginia.   September 13, 1915.)

1. MASTER AND SERVANT ☞13—INTERSTATE COMMERCE—HOURS OF EMPLOYMENT ACT—CONSTRUCTION.

The purpose of Hours of Employment Act March 4, 1907, c. 2939, 34 Stat. 1415 (Comp. St. 1913, §§ 8677-8680), is to limit the time of service of employés, and in cases of emergency to give some latitude in the enforcement of the act, and to place some limit on the time in which additional service may be rendered in case of emergency, and it is not within the spirit of the act that employés should be the sole judges of when an emergency exists to warrant extra service.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ☞13.]

2. MASTER AND SERVANT ☞13—INTERSTATE COMMERCE—HOURS OF SERVICE ACT—CONSTRUCTION.

The purpose of the order of the Interstate Commerce Commission requiring reports within 30 days after the end of each month of all instances where employés subject to the law regulating the hours of their employment have been on duty for a longer period than provided therein is to secure information on the subject, and it imposes an obligation on a railroad company to make a report where the extra hours of service of employés did not exceed 4 hours a day for 3 days in one week.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ☞13.]

3. MASTER AND SERVANT ☞13—INTERSTATE COMMERCE—HOUSE OF LABOR— STATUTORY PROVISIONS—"TOWERS, OFFICES, PLACES, AND STATIONS"— "EMERGENCY WORK."

The act referred to, declaring that no telegraph operator or train

dispatcher shall be permitted to remain on duty for more than 9 hours in any 24-hour period in all towers, offices, places, and stations continuously operated night and day, nor for more than 13 hours in all towers, offices, places, and stations operated only during the daytime, except in case of emergency, and that the provision shall not apply to the crews of wrecking or relief trains, does not apply to emergency work required of operators in attendance at a wreck out on the line of the road, for the words "towers, offices, places, and stations" refer to telegraph offices generally and operators engaged in wrecking or relief service, though technically not members of the crews of wrecking or relief trains, are engaged in emergency work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. 🗝13.

For other definitions, see Words and Phrases, First and Second Series, Emergency Work.]

4. MASTER AND SERVANT 🗝17—REGULATION OF EMPLOYMENT—HOURS OF SERVICE ACT—PENALTIES.

A railroad company, permitting telegraph operators to work a greater number of hours than prescribed by the said act and failing to make a report of the extra hours of service rendered, is liable to but one penalty for each employé, and not a further sum per day for each of the days the reports have been in default, where it denied liability, the omission having been made in good faith, and under the belief that it was not required to make the same.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 16; Dec. Dig. 🗝17.]

Action for Penalty. Action by the United States against the Baltimore & Ohio Railroad Company to recover penalties for violating the Hours of Employment Law. Judgment for plaintiff.

Philip J. Doherty, Sp. Asst. U. S. Atty., of Washington, D. C., and Stuart W. Walker, U. S. Atty., of Martinsburg, W. Va., for the United States.

Arthur S. Dayton, of Philippi, W. Va., for defendant.

WADDILL, District Judge. The declaration in this case contains 30 counts, setting forth the alleged violations of the act in question. The parties have come to an agreement as to the causes of action covered by the first 10 counts, and the questions arising upon the last 20 counts have, by proper stipulation, been submitted to the court for trial without a jury, upon the pleadings and an agreed statement of facts.

Counts 11 to 20, inclusive, involve the alleged violation of the act, in that two telegraph operators at a day and night station known as Pine Grove, W. Va., and one at a place known as the Pine Grove and Hundred, in the same state, on the 26th day of December, 1912, worked a greater number of hours than prescribed by statute, to wit, the operators at Pine Grove continuously for 12 hours in a 24-hour period, and the one at Pine Grove and Hundred for a period of 13 hours and 59 minutes; and counts 21 to 30, inclusive, involve a like charge, in that it is averred that two of the three telegraph operators of the defendant company were required on the 26th of January, 1913, at Wheeling, W. Va., a day and night station, continuously to remain on duty for a period longer than 9 hours, to wit, 12 hours, in a day of

24 hours; and the declaration charges that the defendant company failed and refused to make proper reports to the Interstate Commerce Commission, within 30 days of the dates aforesaid, of the excess time required of its employés, with the reasons therefor, as required by law, and continued in such default as to the first-named station on the 3d, 4th, 5th, 6th, 7th, 8th, 10th, 11th, 12th, and 13th days of February, 1913, and at the last-named station, Wheeling, on the 1st, 3d, 4th, 5th, 6th, 7th, 8th, 10th, 11th, and 12th days of March, 1913, and the purpose of this action is to recover the penalty of $100 for each and every day the defendant was in default, as alleged in the making of said reports.

The defendant earnestly insists that it was not in default, for the reason that under the law regulating hours of employment of employés engaged in interstate traffic, it was exempt from liability, and hence not required to make report, where the extra hours of service were caused by an emergency, in which event its employés were permitted to be and remain on duty for 4 additional hours in the 24-hour period for not exceeding 3 days in any one week, and that both as respects the alleged charge of extra hours at Pine Grove and at Wheeling there was such an emergency as warranted the continuance of its telegraph operators in service for 12, instead of 9, hours; that in each instance the extra duty only lasted 4 hours for one day in one week; that the emergency at Pine Grove arose from a wreck on the road, which necessitated sending one of their three operators to the scene of the wreck; and that the emergency at Wheeling was caused by one of the three operators being detained from reporting for duty at the proper hour because of the sudden illness of his wife, which caused the extra hours of work to be performed there. Defendant further insists that, as respects the third operator at Pine Grove and Hundred, it was not required by law to make any report of the extra hours of service, because the duty was performed at a wreck, and under the terms of the act referred to the same did not apply to crews of wrecking or relief trains.

The case thus stated presents two legal questions for determination, namely, whether the defendant is required to make report of extra service hours where the same does not exceed more than 4 hours in each day of 24 hours for 3 days in a week, and whether the report of extra hours is required where telegraph operators are engaged at a wreck. These will be considered in the order mentioned.

First. The defendant insists that, having been charged specifically in the declaration with a failure to comply with the order of the Interstate Commerce Commission of the 28th of June, 1911, it is only liable for an infraction of that order, and that the government cannot rely upon a subsequent order of the Commission, dated the 8th of April, 1912, set up in its replication to the defendant's pleas filed herein, and further says that the requirement imposed by the order of the 28th of June, 1911, "to report within 30 days after the end of each month, under oath, all instances where employés subject to said act have been on duty for a longer period than that provided in said act," imposed no obligation upon it to make report where the extra hours of service of such employés did not exceed 4 hours a day for 3 days in one week.

Without meaning to pass upon the right of the government to set up by replication an order of the Interstate Commerce Commission, other than the one sued on, the court is inclined to think that the order referred to was one of which the court would have taken judicial notice, whether particularly pleaded or not; and, if so, the defendant's contention would be without merit, since plainly the order of the Commission of the 8th of April, 1912, is conclusive against the view taken by the defendant.

[1] The court, however, does not base its view of this case especially upon this latter order, as manifestly, having in view the purpose of the legislation in question, and the object of the requirement of the Commission of the 28th of June, 1911, the contention of the defendant is not well taken. The purpose of the act in question was to limit the time of service of employés, and at the same time, in cases of emergency, to give some latitude in the enforcing of the act, looking to the practical working of the same; and the purpose, therefore, was to place some limit on the time in which additional service could be rendered in case of emergency.

[2] It was the plain purpose of the order to secure information respecting these very matters; otherwise, without just reason or cause, all employés could have been required to labor 4 additional hours for 3 days in each week, and the Commission would not be advised thereof. It was not intended that this additional service should be required, save in an emergency, and it was certainly not within the spirit of the act that the employés should be the sole judges of when the emergency existed, to warrant the extra service. The order of June 28, 1911, should be reasonably construed, having in mind the purpose for which it was intended, and that plainly was to have the Interstate Commerce Commission informed of the extent of the extra hours required of employés, and the cause or necessity therefor. The failure to have such information would necessarily have seriously embarrassed it in the administration of the law, and largely tend to destroy its effective operation.

[3] Second. Considering the requirement to make report of extra service rendered by the telegraph operators when on duty at a wreck, the Act of March 4, 1907, c. 2939, 34 Stat. 1415, 1416 (Comp. St. 1913, § 8678), provides:

"Sec. 2. * * * Provided, that no operator, train dispatcher, or other employé who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places, and stations operated only during the day time, except in case of emergency, when the employés named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four hour period of not exceeding three days in any week. * * *

"Sec. 3. * * * Provided further, that the provisions of this act shall not apply to the crews of wrecking or relief trains."

The terms of the act seem clearly to sustain the defendant's contention as respects the duty to make reports as to this class of em-

ployés. The act itself in terms applies to hours of service in all towers, offices, places, and stations operated by 'day or night, and the third section of the act expressly excludes from its provisions the crews of wrecking or relief trains. The language "towers, offices, places and stations," in the sense in which it is usued in the act, refers to telegraph offices 'generally, as distinguished from emergency work of the character required of an employé in attendance at a wreck out on the line of the road. The reason that actuated Congress in excluding the crews of wrecking and relief trains, from the operation of the act, is too manifest to need special comment, and for like reason the provision of section 2 does not apply to telegraph operators engaged in wrecking or relief service, whether they may be considered technically members of the crews of the wrecking or relief trains. They may not, in a sense, be termed one of the crew of a wrecking or relief train, but they are employés engaged in and about service in connection with the wreck, quite as important as that of any member of the crew proper, and whose work is of an emergency character, and necessarily of uncertain duration. To extend the act to one so employed would be contrary to the provisions and spirit of the act, and entirely inconsistent with its manifest purpose and intent.

[4] Coming to the consideration of the case upon its merits, the conclusion reached by the court is that under the facts submitted there should be imposed upon the defendant company the penalty of $100 for the failure to make the report of the extra hours of service rendered by each of the four employés who were required to work in excess of the hours specified in the act, at Pine Grove on the 26th of December, 1912, and at Wheeling on the 26th day of January, 1913; that this is the full limit of recovery that should be had on these counts, and the railroad should not be penalized with the further sum of $100 per day for each of the days such reports are alleged to have been in default; the railroad having acted in good faith, and under the belief that it was not required to report the same. To impose this large additional penalty under the peculiar facts and circumstances of this case, and for which defendant denies liability, would be harsh in the extreme, and tend to unduly burden the railroad, rather than attain the wise objects for which the statute in question was intended.

An order will be entered awarding judgment for $400 against the defendant, with costs.